EVANS-SNYDER-BUELL COMPANY v. TURNER, *Appellant,*

Division Two, April 20, 1898.

1. **Replevin:** DESCRIPTION IN CHATTEL MORTGAGE. The description of personal property in a chattel mortgage, in a contest therefor by the mortgagee with other creditors of the mortgagor, must be such that third parties, by the description in the mortgage, and the aid of such inquiries as the description indicates, may identify the particular property so mortgaged.

2. ———: ———: MORTGAGED CATTLE. The mortgage in this case conveyed one hundred and sixty three-year old steers, and among other words of description were these: "Said cattle are all the cattle owned by said mortgagor in said feed lot or on said farm and they

Evans-Snyder-Buell Co. v. Turner.

are all the cattle there are in said feed lot or on said farm in the possession of the mortgagor." *Held,* that the description was sufficient for identifying the one hundred and fifty-eight cattle in said feed lot.

3. ———: ———: CONTEST BETWEEN MORTGAGEE AND ASSIGNEE. A discription of personal property in a chattel mortgage, sufficient in a contest between the mortgagee and mortgagor, is sufficient in a contest for the same property between the mortgagee and the mortgor's assignee (for the benefit of creditors).

4. Appellate Practice: FAILURE TO EXCEPT. Where a litigant objected to the admission of certain evidence at the time of its offer, but did not then and there except to an adverse ruling thereon by the court, his point can not be entertained by the appellate court.

5. ———: FACTS FOREIGN TO THE CASE. An adverse ruling on a question concerning facts in nowise involved in the issues of the case, is not reversible error.

6. ———: DECLARATIONS OF LAW: OMITTED FROM RECORD. Where the record shows that certain declarations of law asked by respondent are not copied into the record, the appellate court will presume that they covered every phase of the case, and that the trial court proceeded correctly.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*John M. Barker* and *Sam W. Bickley* for appellant.

(1) The mortgage is not good because the description of the property in the mortgage is insufficient to pass title. It is not sufficient, standing alone, to make a good or binding mortgage, where the possession is not surrendered to the mortgagee, as in this case. *France v. Thomas,* 86 Mo. 80. Nor could the plaintiff proceed against the property at law, as in this case. *France v. Thomas,* 86 Mo. 80; *Jennings v. Sparkman,* 39 Mo. App. 663; *Estes v. Springer,* 47 Mo. App. 99; *Stonebraker v. Ford,* 81 Mo. 532; *Chandler v. West,* 37 Mo. App. 631. (2) The evidence in the case does not supply the deficiency in description, and therefore plaintiff ought not to recover any of the cattle. (3) The court erred in allowing Mr. Pollard,

over defendant's objection, to detail his conversation as to material matter drawn out of Elliott and McNama after the assignment, because it was not evidence in this case. The validity of the mortgage or agreement could not rest on the affidavit or what McNama or Elliott should say about it afterward. The court reserved the right to pass on the objection in the future, but did not do so, allowing the evidence to stand. (4) The court erred in refusing to allow defendant the right to inquire into the feelings of Deming, the plaintiff's witness, because this witness was a willing witness for plaintiff, and agreed to every suggestion of plaintiff's counsel as regular as hog tracks, but lost his memory absolutely as soon as he was subjected to questioning by defendant's counsel. The defendant had the right to inquire as to his prejudices and preferences, and was not allowed to do so. (5) The court should have given instruction number 1 because there was evidence, and the weight of the evidence tended to show that the cattle were partnership cattle. Further than that the evidence tended to show that the eighty or ninety head in the west field were more apt to have been contemplated than any in the east field. *Hilliker v. Francisco*, 65 Mo. 598; *Phelps v. McNeely*, 66 Mo. 554; *Shackelford v. Clark*, 78 Mo. 493. (6) The court erred in refusing to give the tenth instruction, because, although a partner of Elliott, there was nothing to connect McNama with any consent or connivance on his part with any wrongful mortgaging of partnership property by Elliott. While an unrecorded mortgage has been held good against an assignee, it ought not to be held good against a partner, or the assignee of a partner who in no wise participated in making the mortgage. The mortgage in this case was not recorded in Callaway county where Elliott resided until after the assignment, and the mortgage was not

good against the partnership property. *Priest v. Clotan*, 85 Mo. 398.

*H. M. Pollard* for respondent.

(1) The mortgage located the cattle in one lot on the Brown farm, as being one hundred and sixty native Missouri steers, about one half dehorned, three years old and upward. Such a description supported by such proof is not only ample but perfect. The assignment on its face expressly negatived the intention of conveying any interest in the cattle which had been conveyed by the mortgage. *Roan v. Winn*, 93 Mo. 503; *Jacobi v. Jacobi*, 101 Mo. 507; *Huse v. Ames*, 104 Mo. 91; *Green v. Conrad*, 114 Mo. 651; *St. George v. Branch*, 120 Mo. 226; *Homer v. Bank*, 41 S. W. Rep. 790. (2) One who purchases personal property, without parting with something of value therefor, can not inquire into the validity of a prior mortgage thereon, unless he can show actual fraud. (3) No person purchasing personal property having actual notice of a prior mortgage, and recognizing it in the conveyance he receives, can take precedence over it, even though he be a purchaser for full value. *Aubuchon v. Bender*, 44 Mo. 560; *Vogelsang v. Fisher*, 120 Mo. 386; *Barton v. Sitlington*, 128 Mo. 164; *Mastin v. Halley*, 61 Mo. 196; *Wine Co. v. Rhinehart*, 42 Mo. App. 171; *Dymock v. Railroad*, 54 Mo. App. 400; *Nelson v. Woody*, 56 Mo. App. 151.

BURGESS, J.—This is an action under the statute for the claim and delivery of one hundred and sixty head of native Missouri steers, to which plaintiff alleged that said company was entitled to possession, and that they were wrongfully detained by defendant at Audrain county, Missouri.

VOL. 143 mo—41

The case was tried to the court, a jury being waived. There was judgment in favor of plaintiffs for about one hundred and fifty-eight head of cattle, and one cent damages. In due time defendant filed his motion for a new trial, which was overruled, and he appealed.

In 1894, S. G. Elliott and R. McNama were partners doing business as stock traders under the name of Elliott & McNama. Elliott at that time resided in Callaway county, Missouri, while McNama then resided and has since resided in Audrain county, Missouri. On the seventeenth day of December, 1894, they had, on what is called the Brown farm in Audrain county, a large number of Missouri steers three years of age, and upwards, and being indebted to plaintiff, an Illinois corporation, in the sum of $4,500, Elliott on that day executed his individual promissory note to plaintiff for that sum, due on May 5, 1895, bearing eight per cent interest per annum, and at the same time executed to plaintiff a chattel mortgage on one hundred and sixty head of said steers to secure the payment of said note. The mortgage contains the following provisions:

"One hundred and sixty head of native Missouri steer cattle, 3 years old and over, about one half being dehorned—a few head having on them various brands.

"Said above enumerated and description being intended to cover and include not only all the cattle owned by said mortgagor, as aforesaid, but all additions and accretions thereto are especially included in and covered hereby. The cattle above described may have other brands or marks on them than those mentioned above, but those given are the holding brands or marks, and carry the title of the cattle.

"Now located in a feed lot on what is known as the Brown farm, about 4 miles east of the town of Mexico, in Audrain county, Missouri.

"Said cattle are all the cattle owned by said mortgagor in said feed lot or on said farm and they are all the cattle there are in said feed lot or on said farm in the possession of the mortgagor."

The mortgage was recorded in the recorder's office of Audrain county on the eighteenth day of December, 1894, and in the recorder's office in Callaway county on the fourteenth day of January, 1895. In the meantime, to wit, January 11, 1895, Elliott & McNama made an assignment of all their property to the defendant Turner for the benefit of their creditors. Plaintiff claimed the cattle under its chattel mortgage while defendant claimed them under the deed of assignment for the benefit of the creditors of Elliott & McNama.

Defendants' first contention is that as the possession of the cattle covered by the mortgage was not surrendered to plaintiff by the mortgagor at the time of the execution of the mortgage that it was void, because of the insufficiency of the description of the cattle. The rule with respect to the description of personal property in chattel mortgages, when the recording of the mortgage under the statute takes the place of the actual delivery of the mortgaged property, in a contest with other creditors of or purchasers from the mortgagor, is, that the property must be so described that such parties, by the description of the property in the mortgage, together with the aid of such inquiries as are indicated thereby, may identify the particular property covered by the mortgage. *Stonebraker v. Ford*, 81 Mo. 532; *Hughes v. Menefee*, 29 Mo. App. 192; *Chandler v. West*, 37 Mo. App. 631; *Bank v. Metcalf*, 29 Mo. App. 394. There could have been no difficulty in identifying the steers covered by the mortgage in this case, however vague and uncertain their description was as to the age, marks and brands, because they were located upon a certain farm, and in a feed lot on

that farm. Had there been no other description, as they were described as all of the cattle in the lot, no other description for the purpose of identification was necessary. If there had been a greater number of three year old steers and upwards in the feed lot than called for by the mortgage, so that it would have been necessary to select the steers covered by the mortgage from the entire lot, it would have been impossible under the description given of them in the mortgage to do so, but no difficulty of that kind is presented by this record.

In *Stonebraker v. Ford, supra,* the description was "forty head of cattle, of different ages and sexes, most of them thoroughbreds, on the mortgagor's farm in Pike county." The cattle involved in the suit were described in the petition as "sixteen head of thoroughbred, aged cattle." The mortgagor testified that, at the time the mortgage was given, he had about forty-five or forty-six cattle on his farm of different ages and sexes. The court said: "Is the description of the cattle given in the mortgage sufficient? It is 'forty head of cattle, of different ages and sizes, most of them thoroughbreds.' Had these been all the cattle on the farm of mixed breeds, or had there been only sixteen head of 'thoroughbred, aged cattle' when the mortgage was given, the description would have been clear enough for identification."

But even if the description of the cattle in the mortgage was so indefinite as to invalidate it as to creditors and purchasers or the mortgagor, there can be no question as to its validity between the mortgagee and the assignee. The assignee is simply the representative of the assignors, and stands as it were in their shoes. He acquired no greater rights by reason of the assignment than those possessed by Elliott and McNama. So that this controversy stands just as if it

were a contest over the possession of the cattle between the mortgagor and the mortgagee. *Peet v. Spencer*, 90 Mo. 384; *Gregory v. Tavenner*, 38 Mo. App. 627; *Stonebraker v. Ford*, *supra*.

Moreover, the testimony adduced by plaintiff tended to show that the number of steers covered by the mortgage were in the feed lot described therein at the time of its execution, and the weight of this evidence was for the consideration of the trier of fact.

It follows that no error was committed in permitting the mortgage to be read in evidence.

Defendant complains of the action of the trial court in permitting Pollard, a witness for plaintiff, to testify, over his objections, to a conversation had between himself, Elliott and McNama after the assignment; and also in refusing to permit defendant to inquire into the feelings of one Deming, who also testified as a witness in behalf of plaintiff. It is only necessary to say with respect to the first objection that no exception was saved to the ruling of the court, and under such circumstances that ruling is not the subject of review here.

As to the other question, defendant, upon cross-examination of the witness Deming, asked him the following question:

"*Q.* Are you willing to tell what you know, Mr. Deming?

"Plaintiff objected for the reason that the witness is sworn to tell what he knows." The court sustained the objection and defendant excepted at the time. How the refusal of the court in sustaining the objection to this question can be construed into a refusal to allow defendant to inquire into the feelings of the witness toward either of the parties, and if so which one, we are at a loss to perceive. The question was not with respect to any fact or issue involved in the case, and

no reversible error was committed in sustaining the objection to it.

It is next contended that the court erred in refusing a number of declarations of law asked by defendant. It is shown by the record that certain declarations of law were asked by the plaintiff, which were not copied into the record.

Under such circumstances the presumption must be indulged that such declarations of law covered every phase of the case, and that the trial court proceeded correctly. *Greenabaum v. Millsaps*, 77 Mo. 474. In *Birney v. Sharp*, 78 Mo. 73, it was said: "It is manifestly impossible, in the absence of the instructions given for the plaintiff, for the court to determine whether they were right or wrong. In such cases all the presumptions are in favor of the correctness of the ruling of the trial court. In their absence and without knowing what points have been ruled and how, it is equally impossible to determine whether it was error in the court to refuse the instructions asked by defendant. They may, from aught that appears, have covered the same ground, and been embraced in those already given for the plaintiff, and refused for that reason. Without the entire record before us, we can not say that the court erred in this particular. In such cases, also, the presumptions are in favor of the propriety of the action of the lower court." See, also, *Porth v. Gilbert*, 85 Mo. 125.

Finding no reversible error in the record we affirm the judgment. GANTT, P. J., and SHERWOOD, J., concur.